UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          |   |                    |
|--------------------------|---|--------------------|
| GINA A. DEMARCO,         | ) |                    |
| Plaintiff,               | ) |                    |
| v.                       | ) | No. 10-CV-11711-JLT|
| MICHAEL J. ASTRUE,       | ) |                    |
| Defendant,               | ) |                    |

REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR JUDGMENT

December 15, 2011

SOROKIN, M.J.

The Plaintiff, Gina A. DeMarco ("DeMarco"), moves pursuant to 42 U.S.C § 405(g) for an order reversing and setting aside an unfavorable decision by Defendant Michael Astrue, Commissioner of the Social Security Administration ("Commissioner"), and remanding her disability claim to the Commissioner for an award of benefits or in the alternative for further proceedings. The Commissioner moves for an order affirming his decision. For the following reasons, I RECOMMEND that the court DENY Defendant's Motion for Order Affirming the Commissioner (Docket # 14) and REMAND this matter.

I.     FACTS

Ms. DeMarco was born in 1964 and has a high school diploma (Tr. at 27). From approximately 1986 to 2004, Ms. DeMarco worked as a restaurant waitress, hostess and manager. Id. Her duties included waiting and bussing tables, seating customers, loading dishes

into the dishwasher and other miscellaneous supply stocking (Tr. at 27-29). In 1995, Ms. DeMarco was hospitalized for psychological treatment for postpartum depression (Tr. at 74). In 1999, Ms. DeMarco was involved in a head-on automobile accident (Tr. at 33). After the accident, she had whiplash symptoms that included neck and back pain and later was diagnosed with a herniated lumbar disc. Id. Ms. DeMarco also began to experience migraine headaches. Id. Initially, the headaches occurred once a month but now occur three to four times a month (Tr. at 34).

Ms. DeMarco reports that because of these body pains and headaches, she also suffers from depression (Tr. at 40). The combination of neck pain, back pain, headaches and depression led her to leave her job in 2004 (Tr. at 43). She has not worked since April 30, 2004 (Tr. at 9).

## II. PROCEDURAL HISTORY

Ms. DeMarco filed an application for Disability Insurance Benefits on October 4, 2007 (Tr. at 7). She alleged that she had been disabled from migraines, neck and back pain, arthritis and depression since April 30, 2004 (Tr. at 74). The application was denied on January 11, 2008 (Tr. at 78). On February 18, 2008, Ms. DeMarco requested a review by a Federal Reviewing Official (Tr. at 84). On November 18, 2008, the Federal Reviewing Official concluded that Ms. DeMarco was not entitled to disability insurance (Tr. at 78). On January 22, 2009, Ms. DeMarco requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 90). On February 5, 2010, the ALJ notified Ms. DeMarco that her hearing was scheduled for March 16, 2010 (Tr. at 99).

On March 12, 2010, four days before the scheduled hearing, Brendan G. Carney, then counsel for Ms. DeMarco, requested that the hearing be postponed to a later date (Tr. at 126).

According to the letter requesting the postponement, Dr. John Piecyk had indicted that Ms. DeMarco was suffering from depression, but that Dr. Piecyk, who is not a psychiatrist, would not offer an opinion on the degree of disability (Tr. at 126). Ms. DeMarco contacted her primary care physician, Dr. Sarah J.B. O'Connell, to obtain a referral to a psychiatrist, but Dr. O'Connell was away until late April 2010. Id. Ms. DeMarco then sought a delay in the hearing so a psychiatrist could evaluate her and complete a functional capacity examination relative to any disability caused by psychiatric injuries Id. In these circumstances, the ALJ declined to postpone the hearing (Tr. at 31).

On March 16, 2010, the ALJ conducted the hearing at which Ms. DeMarco, her counsel Gerard B. Carney and vocational expert Amy Vercillo appeared (Tr. at 7). At the time of the hearing, Ms. DeMarco still did not have a meeting scheduled with a psychiatrist (Tr. at 14). At the end of the hearing, the ALJ told Ms. DeMarco and her counsel that they could provide him with a letter or other notice that Ms. DeMarco had an appointment with a psychiatrist (Tr. at 66). The ALJ stated that if he received a letter within a week indicating that Ms. DeMarco had an appointment within a reasonable amount of time, he might "stall the thing" (Tr. at 67). The ALJ also made clear that he was not willing to wait three to four months for notification and that if he did not receive notice of an appointment in a reasonable amount of time, he would make his decision without more information (Tr. at 66-67).

On March 16, 2010, the same date as the ALJ hearing, Ms. DeMarco's counsel, Brendan Carney, notified the ALJ that Ms. DeMarco had arranged to receive weekly psychiatric treatment with Dr. Linda Carmody-Kaczor (Tr. at 183). Brendan Carney stated later in a separate letter,

3

sent on April 6, 2010,[1] that Dr. Carmody-Kaczor was willing to complete a functional capacity examination report once she had completed more sessions (Tr. at 184). Brendan Carney then requested that the ALJ delay his decision until the functional capacity examination was complete. Id.

The ALJ denied Ms. DeMarco's application for disability on April 29, 2010. The ALJ followed the requisite five-step evaluation process to determine whether Ms. DeMarco's alleged impairments entitled her to benefits. See 20 C.F.R. §§ 404.1520, 416.920; Goodermote v. Sec'y of Health & Hum. Servs., 690 F.2d 5, 6-7 (1st Cir.1982); (Tr. at 8). At step one, the inquiry is whether the claimant has done substantial gainful activity. 20 C.F.R. § 404.1520. The ALJ found that Ms. DeMarco had not engaged in any substantial gainful activity since her alleged onset date of April 30, 2004 (Tr. at 9).

At step two, the inquiry is whether the claimant has any "severe impairments" which are those that "significantly limit the physical or mental capacity to perform basic work-related functions." See Goodermote, 690 F.2d at 6; 20 C.F.R. § 416.920(c). The ALJ found that Ms. DeMarco had the following severe impairments: back pain with intermittent bilateral radiation secondary to degenerative disc disease; neck pain secondary to degenerative disc disease; headaches and depression (Tr. at 9-10). The ALJ stated that the medical consultants to the Disability Determination Service had determined that Ms. DeMarco had no severe mental impairment but that he was giving her the "benefit of the doubt" based upon her testimony (Tr. at 9).

---

[1] The letter was dated March 16, 2010, but the fax receipt indicates it was sent on April 6, 2010. The parties agree that the letter was faxed on or around April 6, 2010.

At step three, the inquiry is whether any of the claimant's impairments, separately or taken together, meet or medically equal one of the Listings in 20 C.F.R. § 404, Subpart P, Appendix 1. If so, the claimant is automatically found to be disabled without reference to steps four and five. 20 C.F.R. § 404.1520(a)(4). The ALJ found that Ms. DeMarco's impairments, in isolation or in combination, did not meet or medically equal one of the listed impairments (Tr. at 10). In regards to her depression, the ALJ cited the reports of Dr. Edward Powers, Ph.D. and Dr. Sue Conley, Ph.D. (Tr. at 15). Dr. Powers conducted a Psychodiagnostic Interview with Ms. DeMarco on December 20, 2007, diagnosed her with a dysthymic disorder and assigned a Global Assessment of Functioning score of 60 to 65 (Tr. at 367-68). Dr. Conley completed a Psychiatric Review Technique report on January 10, 2008, and concluded that Ms. DeMarco's affective disorder was not severe (Tr. at 369). Since the ALJ did not find Ms. DeMarco disabled under step three, he proceeded to step four.

At step four, the claimant's residual functional capacity must be compared to the requirements of any past relevant work. 20 C.F.R. § 404.1520(a)(4). In assessing the claimant's residual functional capacity, the ALJ determined that through December 31, 2008, DeMarco could "perform light work[2] . . . except that [she] can occasional[ly] stoop, kneel, crouch and crawl." (Tr. at 12). The ALJ also found that DeMarco "should avoid climbing using ropes, ladders or scaffolds . . . avoid concentrated exposure to hazards such as unprotected heights, [that she] . . . could understand and remember simple instructions . . .[and that she] could concentrate for 2 hour periods over the course of the day on simple tasks." Id. Finally, the ALJ

---

[2] Under 20 C.F.R. § 404.1567(b), light work involves lifting no more than twenty pounds at a time frequently or carrying of objects weighing up to ten pounds. It also can be work that involves light lifting but a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls.

5

also determined that DeMarco could "interact appropriately with co-workers and supervisors" and that she could "adapt to changes in a work setting." Id. The ALJ found that Ms. DeMarco could not perform her past relevant work as a restaurant manager and waitress/ hostess because this work was "semi-skilled." (Tr. at 16).

At step five, the determination is whether the claimant is able to do any other work considering her residual functional capacity, age, education and work experience. 20 C.F.R. § 404.1520(g); (Tr. at 9). The ALJ found that there were jobs that existed in significant numbers in the national economy that Ms. DeMarco could have performed through the last date she was insured, December 30, 2008 (Tr. at 17). Accordingly, the ALJ determined that Ms. DeMarco was not disabled at any time between April 30, 2004, through December 30, 2008 (Tr. at 17).

Ms. DeMarco's counsel, Brendan Carney, submitted the functional capacity examination report completed by Dr. Carmody-Kaczor on June 12, 2010 (Pls. Mem. 7, n.3). Although the report was not submitted as part of the record for the ALJ to consider, Ms. DeMarco asserts that a copy was provided to the Decision Review Board. The report states that Ms. DeMarco suffers from both depression and anxiety (Pls. Mem., Attached Exhibit). It also states that Ms. DeMarco experiences recurrent, severe panic attacks at least once per week, that she is completely unable to function independently outside the home, that she has marked difficulties maintaining social functioning and frequent deficiencies of concentration. The Decision Review Board, however, did not complete a review of Ms. DeMarco's claim during its allowed time (Tr. at 1). Accordingly, the ALJ's decision to deny disability insurance benefits became the final decision of the Social Security Administration on August 5, 2010. Id.

Having exhausted her administrative appeals from the ALJ's decision, Ms. DeMarco

commenced this timely action for a judicial review of the final decision in the district court of the United States where she resides. 42 U.S.C. § 405(g).

## III. DISCUSSION

In this action, Ms. DeMarco objects to the ALJ's conclusions that she was not disabled. Ms. DeMarco argues that the ALJ failed to consider all the evidence because he made his decision before Dr. Carmody-Kaczor completed the functional capacity examination report. She also argues that under SSR 82-59, she had a justifiable cause for her failure to produce the psychiatric medical documentation at the ALJ hearing, since she had a fear of seeing a psychiatric professional. Because the ALJ failed to wait for Dr. Carmody-Kaczor's report, Ms. DeMarco argues that he violated the regulation and abused his discretion.

### A. Standard of Review

This Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). The party seeking remand must show the court the evidence it hopes to present if a remand is granted. Falu v. Sec'y of Health & Hum. Servs., 703 F.2d 24, 27 (1st Cir.1983). New evidence is material if the decision "might reasonably have been different" if the evidence was presented before the time of decision. Id. The requirement for good cause can be satisfied if the evidence was "unavailable at the time of the Secretary's administrative proceedings." Bilodeau v. Shalala, 856 F. Supp. 18, 20-21 (D. Mass. 1994). A remand is appropriate only if "the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is

7

essential to a fair hearing." Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 139 (1st Cir.1987) .

> B. **The Functional Capacity Examination Report Is New and There Was Good Cause for Ms. DeMarco's Failure to Produce the Report**

While it is undisputed that Dr. Carmody-Kaczor's functional capacity examination report is new evidence that was not available to the ALJ, the more difficult question is whether Ms. DeMarco had good cause for her failure to provide the information earlier. 42 U.S.C § 405(g). Ms. DeMarco moved promptly after the hearing both to obtain the required report and to provide it to the Commissioner. She also informed the ALJ of the status of the report's production (albeit without providing a date certain for the filing of the anticipated report), as she attempted to get the report to the ALJ before his decision.

Ms. DeMarco advances "good cause" for not earlier offering a report. She suffers from a psychiatric condition that may impair her ability to seek psychiatric help.[3] The Commissioner acknowledges that Ms. DeMarco's fear of psychiatric treatment may constitute good cause for the failure to present evidence earlier (Def. Mem. 9-10). While the Commissioner's regulation requires evidence to be submitted to the ALJ five days before a scheduled hearing, an ALJ is required to receive evidence after the hearing, but before a decision is issued, if certain conditions are met. 20 C.F.R. § 405.331(c). Specifically, the evidence must create a reasonable possibility, when considered alone or with other evidence, of affecting the decision's outcome. Id. In addition, there must have been one of three additional circumstances that prevented the timely submission of the evidence. For Ms. DeMarco, her fear of seeking psychiatric treatment

---

[3] In explaining her failure to call a psychiatrist in advance of the hearing, Ms. DeMarco said: "I don't think they're going to — the way I feel, I don't think they are going to let me come home. They're not going to want me to come home. They're going to want me to put back some place again, and I don't want to go back there." (Tr. at 65.)

satisfies one of the additional circumstances. 20 C.F.R. § 405.331(c)(2) (stating that a physical or mental limitation that prevented the submission of the evidence can excuse a late submission). Although Ms. DeMarco did not submit her evidence before the ALJ's decision, the regulations clearly intend to provide claimants with physical or mental limitations leeway in submitting their evidence in a timely manner. Given Ms. DeMarco's psychiatric condition, there is sufficient good cause for her failure to provide the evidence at the time of ALJ hearing.

### C. The Functional Capacity Examination Report Is Material.

In a disability insurance hearing, the ALJ must determine the limitations of a claimant when deciding the extent of the claimant's disability. Bilodeau, 856 F. Supp. at 21. The ALJ recognized that Ms. DeMarco suffers from some mental impairments, but found that those mental impairments did not rise to the level of a Listed impairment (Tr. at 9-10). The ALJ referred to the reports of Dr. Edward Powers and Dr. Sue Conley as support for his determination regarding Ms. DeMarco's mental impairments though the ALJ specifically disagreed with Dr. Conley's conclusion that Ms. DeMarco's affective disorder was not severe (Tr. at 15). Rather, the ALJ found the condition "severe." Id. At the hearing, the ALJ also indicated some willingness to consider post-hearing evidence arising from the then pending psychiatric evaluation Ms. DeMarco's counsel described.

Dr. Carmody-Kaczor's Functional Capacity Examination Report, submitted on or around June 12, 2010, provides material information on Ms. DeMarco's psychological condition for two reasons. First, at the time of her report, Dr. Carmody-Kaczor was a treating psychiatrist who had completed weekly therapy sessions with Ms. DeMarco. A report by a treating psychiatrist should be given proper weight, since a treating psychiatrist has had greater time and experience

9

to gain a full understanding of a claimant's condition. 20 C.F.R. § 416.927(d)(2). Notably, neither Dr. Powers nor Dr. Conley were treating psychiatrists.

Second, Dr. Carmody-Kaczor found that Ms. DeMarco had significantly more psychological impairments than the earlier evaluators. In addition to Ms. DeMarco's previously reported affective disorder, Dr. Carmody-Kaczor found that Ms. DeMarco had an anxiety disorder. According to Dr. Carmody-Kaczor, that condition manifested in generalized persistent anxiety and severe panic attacks that occurred at least once a week. She also found that Ms. DeMarco had moderate restriction in her daily living activities, marked difficulties in maintaining social function, frequent deficiencies in concentration and one or two episodes of deterioration or decompensation in work-like setting. These findings differed from Dr. Conley's report, which stated that Ms. DeMarco had fewer degrees of limitation and no anxiety disorder (Tr. at 369, 379).

One more issue bears mention. Ms. DeMarco's period of insurance expired on December 31, 2008 (Tr. at 9). Dr. Carmody-Kaczor rendered her report in June 2010, based upon treatment occurring in April and May 2010. In view of this chronology, the Commissioner contends that the opinion is not "material." No doubt an "implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previous non-disability condition." Beliveau v. Apfel, 154 F. Supp. 2d 89, 95 (D.Mass. 2001) (Gorton, J.) (quoting Szubak v. Sec'y of Health & Hum. Servs., 745 F.2d 831, 833 (2d Cir. 1984)). While a

10

clearer, more comprehensive report would likely have resolved this question conclusively,[4] on the present record, the decision of Social Security, with the report, "might reasonably have been different." Falu, 703 F.2d at 27. On the record before the ALJ, he found Ms. DeMarco suffered from a severe impairment arising from affective disorder and determined that Ms. DeMarco had limitations in concentration. He also found that Ms. DeMarco had the ability, within certain limitations, to interact appropriately, adapt to change and concentrate on simple tasks. Ms. DeMarco's condition in 2010 provides evidence of her condition through December 31, 2008, especially where, as here, the record establishes she suffered then from the condition described in the later opinion report. In these circumstances, the weight to accord this new evidence and whether this new evidence ultimately results in a different decision is for the ALJ to determine, but it is new evidence that is material within the meaning of 42 U.S.C. § 405(g).[5]

---

[4] If, for example, Dr. Carmody-Kaczor had rendered an opinion regarding whether or not the conditions she observed developed after December 31, 2008.

[5] I also note that the ALJ did not reject a new report out of hand even though such a report would be based upon an evaluation conducted outside the insurance period.

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the court DENY Defendant's Motion for Order Affirming the Commissioner (Docket # 14) and REMAND this matter to the Social Security Administration for further proceedings consistent with this recommendation.[6]

                                                       /s/ Leo T. Sorokin
                                        UNITED STATES MAGISTRATE JUDGE

---

[6] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Hum. Servs., 848 F. 2d 21 (1st Cir.1988); U.S. v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F. 2d 603 (1st Cir.1980); U.S. v. Vega, 678 F. 2d 376, 378-79 (1st Cir.1982); Scott v. Schweiker, 702 F. 2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).